## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ELDREAMA ELERSON,**

        **Plaintiff,**            **CIVIL ACTION NO. 05-CV-73419-DT**

      **vs.**              **DISTRICT JUDGE ROBERT H. CLELAND**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**

This Court recommends that Defendant's Motion For Summary Judgment be **DENIED** (Docket # 16) and Plaintiff's Motion for Summary Judgment **GRANTED** (Docket # 11) and the case **REMANDED** to the Commissioner for further proceedings.

**II.**    **PROCEDURAL HISTORY**

This is an action for judicial review of the final decision of the Commissioner of Social Security that the Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423(d).  The issue for review is whether there was adequate support for the Commissioner's decision that the Plaintiff is not disabled.

Plaintiff Eldreama Elerson filed an application for Disability Insurance Benefits ("DIB") on March 6, 2002. (Tr. 44-46). She alleged she had been disabled since October 15, 2000 due to multiple sclerosis. *Id*. Plaintiff's claim was initially denied. (Tr. 27). Plaintiff sought a review hearing before an Administrative Law Judge (ALJ) on August 18, 2002. (Tr. 33). A hearing took place before ALJ Douglas N. Jones on November 19, 2002. (Tr. 290-324). Plaintiff was represented by an attorney at the hearing. (Tr. 41-43, 290). The ALJ denied Plaintiff's claim in a written opinion issued on February 6, 2003. (Tr. 14-23). The Appeals Council denied review of the ALJ's decision on July 1, 2005 and the ALJ's decision is now the final decision of the Commissioner. (Tr. 4-6); 20 C.F.R. § 404.981. Plaintiff, acting *in pro per*, appealed the denial of her claims to this Court, and both parties have filed motions for summary judgment.

## III.   PLAINTIFF'S MEDICAL HISTORY

Plaintiff has a history of mild diverticulosis. (Tr. 129). In mid-October 2000 Plaintiff reported numbness in her hands to her primary physician, Dr. Richard LaBaere. She also reported cervical pain, increased fatigue, blurred vision and occasional headaches. (Tr. 189). Dr. LaBaere noted some hyperflexia in Plaintiff's upper extremities with minimal weakness in hand grip and upper arm strength. (Tr. 190). A subsequent MRI showed demyelinating lesions in the brain and on the cervical spine. Plaintiff was referred to a neurologist, Dr. Devinderjit S. Bhangu, for further evaluation and to rule out multiple

sclerosis. (Tr. 101, 190, 185, 217, 233). The results of a brainstem auditory evoked potential study were normal. Spinal tap results were negative. Dr. Bhangu reported his findings to Dr. LaBaere. Dr. Bhangu stated that he believed multiple sclerosis could not be ruled out but that the tests did not confirm such a diagnosis. He suggested that Plaintiff seek a second opinion. (Tr. 206-09). Plaintiff's condition improved for a short period after treatment except for some numbness in her hands. Plaintiff's condition then worsened after Thanksgiving and she reported: decreased sensation in her hands, low energy, fatigueability, vision problems, numbness and weakness in both legs and bowel/bladder problems. (Tr. 111-13, 180, 204, 206). A motor examination revealed normal tone, bulk, and strength. (Tr. 208). Plaintiff also informed Dr. LaBaere that she could not handle her job as department manager due to stress. (Tr. 182-83). Plaintiff was prescribed Neurontin. (Tr. 204).

Plaintiff sought the opinion of another neurologist, Dr. Stanton Elias, in February 2001. (Tr. 111-13). Dr. Stanton reported that Plaintiff: (1) was alert and oriented; (2) had a normal gait; (3) had normal bulk and tone with 5/5 strength in upper and lower extremities; and (4) had a normal neurological examination with the exception of decreased sensation to pinprick over her right foot and calf. (Tr. 112). Dr. Stanton further opined that Plaintiff's symptoms were highly suggestive of multiple sclerosis because her symptoms

were recurrent, she had multiple lesion sites and an evaluation for other causes proved negative. (Tr. 113). Dr. Staton recommended treatment with Avonex. *Id.*

The records contains reports of Plaintiff's continued appointments with Dr. Bhangu and Dr. LaBaere from February 2001 through October 2002. Dr. Bhangu prescribed Avonex to treat Plaintiff's multiple sclerosis and Pamelor for chronic pain in February 2001. Plaintiff's reports of fatigue and paraesthesias in her upper extremities continued. Although Plaintiff expressed a desire to return to work, Dr. LaBaere recommended against it because the medicine to her treat multiple sclerosis could temporarily worsen her condition. (Tr. 178-79, 203).

In early March 2001 Plaintiff reported to Dr. LaBaere that she could not stand or walk for more than 2 hours and that her fatigue had worsened. Dr. LaBaere notified Plaintiff's employer that she was not to work. Later that month, Plaintiff stated that her fatigue had lessened but she had increased pain in her neck and back and headaches. Plaintiff's hand grip strength had decreased in both hands. Dr. LaBaere recommended that she minimize her activities at home. (Tr. 175-76).

Dr. Bhangu reported in April 2001 that Plaintiff's symptoms had almost resolved but had then resurfaced. Plaintiff complained of worsening pain in her neck, shooting pain along her body, dizziness, and exhaustion. Dr. Bhangu subsequently began Plaintiff on a course of IV steroids. (Tr. 202). Dr. LaBaere also noted that Plaintiff had a possible

-4-

neurogenic bladder and gastritis for which he prescribed medication.  (Tr. 174).  Plaintiff

subsequently went to the emergency room for urination difficulties on April 14, 2001.  She

was treated and released.   (Tr. 115-16).   Plaintiff continued to report fatigue but

experienced less pain.  (Tr. 171-73).

Between June and July 2001, Plaintiff reported to her doctors that she had no new

symptoms or motor weakness and that medication helped with her pain.  There were no

changes in her neurological examination.  Vicodin was prescribed for Plaintiff's pain.

Plaintiff also reported increased difficulties with her bowel.   An ultrasound of her

gallbladder showed normal results.  (Tr. 169-70, 201. 214-15).  Doctor's notes indicate that

Plaintiff may have contracted a cold or flu possibly from watching an infant who had a

throat infection.  (Tr. 169).

By August 2001 Plaintiff continued to experience abdominal and pelvic pain.  A

colonoscopy was performed, which showed evidence of an ulcer or gastrosophageal reflux

disease.  (Tr. 123).  Plaintiff continued to complain of pain in her left arm and both lower

extremities but reported that there were no new motor or neurological deficits. Dr. Bhangu

resumed treatment with medication and increased Plaintiff's dosage of Neurontin.  (Tr.

199).

In September 2001 Plaintiff underwent a cholecystectomy with good results.  (127-

28, 132, 197).  Plaintiff reported occasional vomiting, nausea, and heart, neck, abdominal

pain.  (Tr. 158-59, 161-62).  Dr. LaBaere also noted that Plaintiff claimed she was under increased stress due to a business course she was taking.  (Tr. 158).  Plaintiff told Dr. Bhangu in October 2001 that her cholecystectomy left her exhausted and that she had no energy to attend school due to her increased fatigue.  (Tr. 196).  There were no reported changes in Plaintiff's physical/neurological examination.  ProVigil was prescribed for Plaintiff's fatigue.  *Id.*

Plaintiff's headaches responded well to medication and her neck pain was better by December 2001. (Tr. 156).  However, Plaintiff was involved in a motor vehicle accident that same month.  Plaintiff reported that she had pain throughout her shoulders and in her right knee, which was aggravated by walking and standing, and that she was feeling overwhelmed. (Tr. 139, 154).  She and Dr. LaBaere discussed stress reduction exercises and Dr. LaBaere prescribed Serzone for depression.  Plaintiff also reported on December 21, 2001 that she experienced a black out spell in November 2001 that lasted about 15 minutes and that she had daily headaches and dizziness.  (Tr. 194).  An EEG was ordered to rule out partial seizures.  *Id.*  The EEG results were normal.  (Tr. 193).

Plaintiff still reported pain and numbness in her hands and pain in her neck in January 2002 and tests confirmed she had a weakened hand grip.  (Tr. 151).  Her stress had increased in February 2002 due to a family member's death and she had resumed smoking. (Tr. 150).  Plaintiff told Dr. Bhangu that the pain in her extremities worsened with

prolonged standing and walking.  There was no change in Plaintiff's motor deficits or vision.  Dr. Bhangu switched Plaintiff's medication from Avonex to Betaseron.  (Tr. 192). In March 2002 Dr. LaBaere noted that Plaintiff had not responded well to the Betaseron and that Plaintiff has a mild exacerbation of her multiple sclerosis.  (Tr. 148).  By April 2002 Plaintiff also experienced cellulitis near the area of her Betaseron injections and proteinuria. She stopped taking the Betaseron at her doctor's instruction.  (Tr. 148, 281-2).

Plaintiff was also examined in June 2002 by Dr. S.L. Schuchter, a consultative state physician, at the request of the state agency.  Dr. Schuchter's examination revealed that: (1) Plaintiff had a slight tremor of her outstretched fingers; (2) light touch sensation was diminished over Plaintiff's lower left arm and fingers but intact in her lower extremities; (3) Plaintiff's vibration sensation was intact throughout; (4) Plaintiff's hand grip was 34 kg on the right and 18 kg on the left; (5) Plaintiff could not perform rapid alternating motions; (6) Plaintiff had normal straight leg raising with some absent reflexes; and (7) Plaintiff had a normal gait and was able to walk on her heels and toes.  (Tr. 236-41).

A state psychologist also examined Plaintiff in June 2002.  The psychologist diagnosed Plaintiff with dysthmic disorder.  The psychologist also completed a Psychiatric Review Technique Form and concluded that: (1)  Plaintiff's daily activities are mildly restricted; (2) she has mild difficulties in maintaining social functioning and in maintaining

concentration, persistence and pace; and (3) Plaintiff had no episodes of decompensation. (Tr. 258).

A state agency physician reviewed Plaintiff's medical record in July 2002. (Tr. 264-73). The physician concluded that Plaintiff could perform light work with limited use of her upper left extremity due to weakness and decreased grip strength based upon Dr. Shuchter's examination. (Tr. 264, 267). The physician also found Plaintiff could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl and frequently reach overhead, handle, finger or feel with her left extremity. (Tr. 268-9). She also noted that Plaintiff should only have moderate exposure to vibration and no exposure to hazardous machinery or heights. (Tr. 270). The physician found no visual or communicative limitations. (Tr. 269-70).

Plaintiff reported to Dr. LaBaere in July 2002 that she was feeling shaky, had swelling around her abdomen, and was having difficulty sleeping. Dr. LaBaere believed these symptoms were due to her medication, Prednisone. (Tr. 280). She also had leg and knee pain with swelling and increased tremors, especially in her left arm. (Tr. 279).

Plaintiff was examined by Dr. Jolanta Sobotka in August 2002 about her knee pain and possible autoimmune condition. Plaintiff reported to Dr. Sobotka that she had increased knee pain and difficulty standing on her feet for long periods of time. Plaintiff also noted difficulties with her left arm and some shakiness. The doctor noted that Plaintiff

had mild osteoarthritis, a positive rhematoid factor and glomerulonephritis.   He

recommended physical therapy.  (Tr. 285-860).

Dr. LaBaere's last notes from October 2002 indicate that Plaintiff reported worsened

neck pain, blurry vision and left arm weakness along with continued proteinuria and

abdominal pain.  (Tr. 276).

## IV.    <u>HEARING TESTIMONY</u>

The ALJ took testimony from Plaintiff at the November 2002 hearing.  (Tr. 295-316).

Plaintiff stated she was born in October 1960, graduated from high school in 1979, and

obtained a license to be a certified nurse's aide.  (Tr. 296, 311-12).  Plaintiff testified about

her prior work as a retail manager, cashier and pharmacy assistant at Wal-Mart, restaurant

greeter/waitress at the Hyatt Regency, and nurse's aide.  (Tr. 92, 266, 311-15, 318).  Plaintiff

also told the ALJ about the symptoms associated with her medical conditions and

medication, including weight gain, extreme fatigue, dizziness/lightheadedness, blurred

vision, numbness and shaking in her left hand, pain in her legs, feet, neck, back and left

shoulder.  (Tr. 303-305).  She further informed the ALJ that she:  (1) can only sit for 30-45

minutes at a time; (2) can walk for 30 minutes but must rest for 20 minutes before she

resumes walking; (3) can carry a gallon of milk if necessary but not on a sustained basis;

(4) cannot stand.  (Tr. 306-07).  Plaintiff testified that she lays down most of the day but will

periodically sit up for about ½ hour.  (Tr. 308, 316).  She also stated that: (1) her husband

and daughter prepare her meals; (2) her husband does the household chores; (3) she has a driver's license but she rarely drives; (4) she goes to church weekly for about 45 minutes; and (5) she engages in no social activities.  (Tr. 303, 308-09).

The ALJ also took testimony from Ann Tremblay, a vocational expert ("VE").  The VE testified that she had prepared a vocational analysis form regarding Plaintiff's past relevant work and that Plaintiff had no transferrable work skills.[1]

The ALJ asked the VE to assume the following hypothetical:

> If I were to ask you to assume a [sic] individual of the Claimant's age, education and work experience, who was limited to sedentary work and needed the option to alternate between sitting and standing at will and would only occasionally bend at the waist, occasionally bend at the knee, occasionally kneel, occasionally crawl, occasionally climb stairs, occasionally be exposed to hazardous machinery or unprotected heights, and would never climb ladders, would not be required to - - there'd be no forceful or sustained gripping or grasping with the left hand, and there would be - - frequent, but not constant, gross manipulation with the left hand or fine manipulation with the left hand, would there be work that such a person could perform?  (Tr. 318-19).

The VE testified that such an individual could not perform Plaintiff's past, relevant work.  (Tr. 319).  The ALJ then asked the VE whether such a person could perform any

---

[1]     The VE's analysis form indicated the following skill levels for Plaintiff's past, relevant work: (1) retail manager was medium and semi-skilled; (2) nurse's aide was heavy and semi-skilled; (3) restaurant greeter/waitress was medium and unskilled; and (4) cashier was light and unskilled.  (Tr. 92).

other unskilled work.  The VE replied that existing positions for such a person include work as a security monitor, order clerk/order checker position, and time keeper.  *Id.*

The VE further testified in response to further hypothetical restrictions posed by the ALJ and Plaintiff's attorney.  She testified that work would be precluded if the previously described hypothetical individual is unable to sit for more than two hours out of the workday and needs to lie down for the remainder of the day.  Such work would also be precluded for an individual that could perform sedentary work for only one to two days with the remaining work days spent lying down for four to five hours, had unpredictable episodes of blurred vision after 10 minutes of eye focus, and could not sit for more than ½ hour at a time.  (Tr. 322-23).

## V.    STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  It is not the function of this court to try cases *de novo*,

-11-

resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r of Social Security*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## VI.    DISCUSSION AND ANALYSIS

### A.    Framework for Social Security Disability Determinations

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1)    she was not presently engaged in substantial gainful employment; and

(2)    she suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    she did not have the residual functional capacity (RFC) to perform her relevant past work.

-12-

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented her from doing her past work, the Commissioner would, at step five, consider her RFC, age, education and past work experience to determine if she could perform other work. If she cannot, she would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.

### B.     The ALJ's Findings

The ALJ determined that Plaintiff met the disability insured status requirements and had not engaged in substantial gainful activity since October 15, 2000. He also concluded that Plaintiff has:  multiple sclerosis, degenerative disc disease of the cervical spine, a history of stabilized interstitial cystitis and diverticulitis, status post cholecystectomy, gastroesophageal reflux disease, slamerulonephritis, osteoarthritis of both knees with a positive rheumatoid factor, and a dysthmyic disorder. The ALJ concluded that these impairments are severe but they do not meet or medically equal any listed impairments. The ALJ additionally found that Plaintiff's allegations regarding her limitations were not totally credible. The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform a significant range of sedentary work. The ALJ ultimately concluded that Plaintiff's RFC precluded her from performing her past relevant work but that Plaintiff

-13-

was not disabled because there were other jobs available in the economy for a person of Plaintiff's age, educational level, and RFC.  (Tr. 21-22).

**C.    <u>Arguments</u>**

Plaintiff's exact challenges to the ALJ's non-disability finding are unclear.[2]  A liberal reading of Plaintiff's pleadings suggests that she assigns error to the ALJ's finding that her multiple sclerosis did not necessarily render her disabled, which the Court construes as a challenge to the ALJ's step three determination.

The Sixth Circuit has conclusively determined that multiple sclerosis does not render a person disabled *per se* under the social security guidelines.[3]  *E.g., Biltoft v. Bowen*, 875 F.2d 861 (6th Cir. 1989) (Table; text in Westlaw); *Headrick v. Sec'y of Health & Human*

---

[2]     However, Plaintiff does clearly ask this Court to consider new evidence when evaluating whether substantial evidence supports the ALJ's findings.  However, the Court may not do so under Sixth Circuit law.  *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (holding that evidence submitted to the Appeals Council after the decision of the administrative law judge "cannot be considered part of the record for purposes of substantial evidence review.").

[3]     Nevertheless, the Sixth Circuit has noted that multiple sclerosis is "an incurable, progressive disease subject to such periods of remission and exacerbation.  *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981).  Therefore, "consideration should be given to the frequency and duration of the exacerbations, the length of remissions, and the evidence of any permanent disabilities" when a judge evaluates a claimant with multiple sclerosis.  *Wilcox v. Sullivan*, 917 F.2d 272, 277-78 (6th Cir. 1990).  *See also Anderson v. Comm'r of Social Security*, 440 F. Supp. 2d 696, *Jones v. Sec'y of Health & Human Servs.*, No. 93-1958, WL 468033 at **3 (6th Cir. 1994).

-14-

*Servs.*, 862 F.2d 316 (6th Cir. 1989) (Table; text in Westlaw).  However, multiple sclerosis is

a listed impairment.  *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 11.09.[4]

The ALJ determined at Step Two that Plaintiff has multiple sclerosis.  (Tr. 19).  In

making his Step Three determination, the ALJ here stated:

> The medical evidence indicates that the claimant [*sic*] these
> impairments are "severe" within the meaning of the Regulations,
> but not sufficiently severe to meet or medically equal the criteria
> for any condition set forth in the Medical Listings.

(Tr. 19).

The ALJ's conclusory finding hampers this Court's ability to conduct a meaningful

judicial review of this case.  *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519

(6th Cir. 1985); *Bailey v. Comm'r of Social Security,* 1999 WL 96920 at **4 (6th Cir. (Ohio));

Social Security Ruling ("SSR") 82-62 at *4 (The "rationale for a disability decision must be

written so that a clear picture can be obtained.").  Meaningful judicial review is contingent

upon knowing the facts and the law upon which the ALJ relied in order to arrive at his

conclusions.  "[W] e review the [Commissioner's] decision only to determine whether her

factual findings are supported by substantial evidence and whether she applied the correct

---

[4]     Section 11.09 provides that claimant with multiple sclerosis will
automatically be determined disabled if there is also evidence of:  (A) disorganization of
motor function as described in 11.04B; or (B) visual or mental impairment as described
under the criteria in 2.02, 2.03, 2.04, or 12.02; or (C) significant reproducible fatigue of
motor function with substantial muscle weakness on repetitive activity, demonstrated
on physical examination, resulting from neurological dysfunction in areas of the central
nervous system known to be pathologically involved by the multiple sclerosis process.

-15-

legal standards." *Miller v. Comm'r of Social Security*, 181 F. Supp. 2d 816, 820 (S.D. Ohio 2001), citing to 42 U.S.C. § 405(g) and *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984).

The ALJ makes no reference to Listing 11.09.  He does not discuss the evidence in the context of the criteria set forth in Listing 11.09, thereby failing to articulate his reasons for determining that Plaintiff's severe impairments do not render her disabled. Consequently, the Court cannot determine why the ALJ made the determination that he did or whether that determination was legally proper.  The case must therefore be remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) so that the ALJ may clarify the record.  *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).[5]

Plaintiff also asserts that the ALJ erred in finding her less than credible.  An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters*, 127 F.3d at 531.  However, credibility assessments are not insulated from judicial review.  Despite the deference due, such a determination must nevertheless be supported by substantial evidence.  *Id.*

---

[5]     In doing so, the ALJ may also wish to consider whether to supplement the record relative to the pertinent time period at issue, especially given the "progressive" nature of multiple sclerosis subject to periods of relapse and remission.

-16-

To establish a disability, a claimant must demonstrate a medically determinable impairment that reasonably caused the pain or disabling symptoms.  20 C.F.R. § 404.1529(b).  The ALJ evaluates all relevant evidence offered to support the alleged symptoms. 20 C.F.R. § 404.1529(c).  Relevant evidence includes objective medical evidence, medications, treatments, and subjective reports of aggravating and ameliorating conditions and the effects of the symptoms on the claimant's daily life.  20 C.F.R. § 404.1529(c)(2)-3; SSR 96-7p.

The ALJ discounted Plaintiff's allegations that she cannot perform any work "due to constant and severe pain, fatigue, blurred vision, left arm tremors and burning and tingling of her left shoulder, back, arms, legs and feet, especially when she walks were not fully credible."  (Tr. 20).  The ALJ further stated his reasons for this determination in that these allegations were inconsistent with objective evidence, the lack of more intensive treatment, the claimant's ordinary activities such as the taking of a business course, and Plaintiff's appearance and demeanor at the hearing.  *Id.*

The Court must look beyond the ALJ's dismissal of Plaintiff's allegations of pain and other symptoms based upon his observations of her at the hearing when determining if substantial evidence supports the ALJ's credibility determination.  *See Martin v. Secretary of Health & Human Servs.*, 735 F.2d 1008, 1010 (6th Cir. 1984)) (quoting *Weaver v. Secretary of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir.1983)).  This task,

however, is made difficult by the ALJ's lack of specificity.  Social Security Ruling 96-7p states that the ALJ may not disregard the claimant's subjective statements concerning her ability to work "solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186 at *1.  The ALJ may not "make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' ···· The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *2.

The ALJ cites the magic language contained within 20 C.F.R. § 404.1529 and SSR 96-7p ("inconsistent with objective evidence", "lack of more intensive treatment", "daily activities") but leaves the Court to guess what factual findings he made in assessing Plaintiff's alleged symptoms.  For instance, there is no discussion whatsoever of Plaintiff's daily activities in the ALJ's written opinion other than his citation to Plaintiff's attempt to take a business course in October 2001.  (Tr. 20).  However, the Sixth Circuit has found that when a claimant suffers from a disease such as multiple sclerosis, which is subject to periods of relapse and remission, the claimant's ability to attend school does not equate with an ability to engage in substantial, gainful employment.  *See Cohen v. Secretary of*

-18-

*Health & Human Srvs.*, 964 F.2d 524, 530 (6th Cir. 1992); *Wilcox*, 917 F.2d at 277. Furthermore, there is no information in the record about Plaintiff's business course such as how often or for how long Plaintiff attended this business course. The record only notes Plaintiff's statement that the business course caused her stress and that she had to quit the course due to fatigue. (Tr. 158, 196).

There is also no indication as to what more "intensive treatment" might be available to treat Plaintiff's subjective complaints. In fact, the ALJ's written opinion does not discuss any of Plaintiff's treatment other than to say she attended aqua therapy. (Tr. 19).[6] Based upon the foregoing, the Court cannot find that the ALJ's credibility finding is supported by substantial evidence. On remand, the ALJ must re-assess the credibility of Plaintiff's allegations and provide a more detailed explanation as to the basis of his assessment.

---

[6] Although not directly stating it as a basis for his credibility finding, the ALJ also makes passing reference to Plaintiff's contraction of a cold or flu when watching an infant and states "childcare is certainly not inconsistent with the ability to perform work that requires even less strenuous activity." (Tr. 19). As noted by the 7th Circuit, "taking care of an infant, although demanding, has a degree of flexibility that work in the workplace does not." *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). Furthermore, the passing reference in a doctor's note to Plaintiff's alleged care for infant provides little evidence to contradict Plaintiff's claim that she is unable to work because the circumstances surrounding that care were not part of the record before the ALJ. Indeed, Plaintiff asserts in her pleadings that she was "around" her grandchildren but had not cared for them in the way implied by the ALJ. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4).

VII.  **RECOMMENDATION**

Plaintiff's Motion for Summary Judgment should be **GRANTED** (Docket # 11).

Defendant's Motion for Summary Judgment should be **DENIED** (Docket # 16) and the case

**REMANDED** to the ALJ to fully consider, and state the reasoning for determining,

whether or not Plaintiff meets the Listing § 11.09 as a result of her multiple sclerosis.  If the

ALJ should determine that Plaintiff had a listed impairment at the relevant time, a

calculation of benefits must then be determined.  If, however, the ALJ determines that

Plaintiff does not have a Listed Impairment, he must re-assess the credibility of Plaintiff's

allegations and should reconsider, if necessary, his earlier Step Four and Step Five

determinations.

VIII.  **NOTICE TO PARTIES**

Either party to this action may object to and seek review of this Report and

Recommendation, but must act within ten (10) days of service of a copy hereof as provided

for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections

constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985);

*Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v.*

*Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to

raise others with specificity will not preserve all objections that party might have to this

Report and Recommendation.  *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: October 30, 2006                        s/ Mona K. Majzoub

**MONA K. MAJZOUB**

**UNITED STATES MAGISTRATE JUDGE**

**<u>PROOF OF SERVICE</u>**

I hereby certify that a copy of this Amended Report and Recommendation was served upon Counsel of Record on this date.

Dated:  October 30, 2006                        s/ Lisa C. Bartlett

**Courtroom Deputy**

-21-